**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GLORIA MENDOZA *et al.*,

      Plaintiffs,

                                                No. 19-CV-00991 MV/KK

v.

FIRST SANTA FE INSURANCE SERVICES,
INC. n/k/a HUB INTERNATIONAL INSURANCE
SERVICES, INC. *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Gloria Mendoza, Anthony Chavez, and Maria Gallegos' ("Plaintiffs'") Motion to Remand. Doc. 10. Defendants Hudson Insurance and Tribal First filed a response in opposition [Doc. 14] and Plaintiffs filed a reply [Doc. 17]. The Court then ordered the parties to submit supplemental briefing [Doc. 38] and they complied, with Defendant HUB International Insurance Services, Inc. joining the supplemental brief filed by Hudson Insurance and Tribal First.[1] *See* Docs. 39, 40, and 41. Having considered the briefs, exhibits, relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken and will be **GRANTED**. The Court will accordingly remand this action back to the Second Judicial District Court pursuant to 28 U.S.C. § 1447.

---

[1] In their First Amended Complaint, Plaintiffs name HUB International Insurance Services, Inc. as a defendant due to their belief that HUB International acquired another defendant they had previously named: First Santa Fe Insurance, Inc. *See* Doc. 1 Ex. 2 at ¶ 5. HUB International now asserts that it was incorrectly named in this action because it is "not the successor to First Santa [Fe] and First Santa Fe is not 'now known as' Defendant HUB." Doc. 26 at 9. The Court finds that it need not resolve this issue prior to ruling on the instant motion because it has no bearing on whether the case must be remanded for lack of subject-matter jurisdiction under 28 U.S.C. § 1447.

**BACKGROUND**

This motion requires the Court to decide whether Article I, Section 8, Clause 17 of the United States Constitution, also known as the "Enclave Clause," gives rise to federal jurisdiction over a civil action alleging that Defendants violated New Mexico state law when they unfairly denied Plaintiffs' workers' compensation claims for injuries Plaintiffs suffered while working at the Isleta Resort & Casino on the Isleta Pueblo. Whether the Isleta Pueblo is in fact a "federal enclave" within the meaning of the Enclave Clause is not as obvious as Defendants suggest. The Court need not resolve that difficult issue here, however, because the claims Plaintiffs raise in their complaint are only incidentally related to their injuries on the Pueblo and arise primarily from Defendants' subsequent actions off of it. The Court therefore finds that the federal enclave doctrine does not apply to this case. Nor do Plaintiffs' claims necessarily raise a substantial question of federal law that must be decided in this Court. Because Defendants have not provided a valid basis for the Court to assert jurisdiction over Plaintiffs' state law claims, the case must be remanded to state court.

**I.      Plaintiffs' Complaint**

As per their First Amended Complaint filed in the Second Judicial District Court in Bernalillo County on September 17, 2019, Plaintiffs are current and former employees of the Isleta Resort & Casino who suffered injuries while at work. *See* Doc. 1 Ex. 2 at ¶¶ 22–24 ("Amended Complaint"). They are also "third party beneficiaries to workers' compensation insurance policies produced, sold and/or administered by Defendants." *Id*. at ¶ 12. Defendant First Santa Fe Insurances Services, Inc. is a former New Mexico corporation that acted as an insurance "producer" or broker in securing workers' compensation coverage for the Isleta Resort & Casino. *Id*. at ¶¶ 4, 25. Defendant Hudson Insurance is a foreign corporation, formed in Delaware and

registered to do business in New Mexico, that sold an insurance policy "which was intended to cover… claims made by Plaintiffs as the third-party beneficiaries of such policy." *Id*. at ¶¶ 27. Defendant Tribal First is a California corporation serving as the third-party administrator on behalf of Hudson Insurance in each of Plaintiffs' claims. *Id*. at ¶ 28. On Plaintiffs' information and belief, none of the Defendants are tribal entities nor entities owned or operated by any Native American tribe or pueblo. *Id*. at ¶¶ 6, 8, and 11. "Plaintiffs have intentionally not named their employer [the Isleta Resort & Casino] as a party herein." *Id*. at ¶ 18.

The instant action arises from Defendants' allegedly unfair and misleading responses to Plaintiffs' claims for workers' compensation. Ms. Mendoza received a letter from Defendant Tribal First on September 11, 2015 in response to her claim. Doc. 1 Ex. 2 at 36. The letter was addressed to an address in Los Lunas, New Mexico and listed a return address in San Diego, California. *Id*. In the letter, Tribal First advised Ms. Mendoza that her claim was being denied because she failed to report it within the 24-hour window required by the Isleta Resort & Casino's work injury program. *Id*. Tribal First then sent a second letter in relation to Ms. Mendoza's claim on November 23, 2015, this time to the State of New Mexico Workers Compensation Administration in Albuquerque, New Mexico. *Id*. at 37. In the second letter, Tribal First asserted that the state workers' compensation appeals board lacked jurisdiction over Ms. Mendoza's claim because the adjudication of the claim in a state forum would violate the Isleta Resort & Casino's sovereign immunity as a Tribal entity. *Id*.

Ms. Gallegos received a letter from Tribal First on July 31, 2017 in response to her claim. *Id*. at 40. The letter was addressed to an address in Albuquerque, New Mexico and listed the same return address in San Diego listed on the letters to Ms. Mendoza. *Id*. In the letter, Tribal First advised Ms. Gallegos that her claim had been denied because she was not "clocked into work"

when her injury occurred. *Id*.

Mr. Chavez received a letter from Tribal First on March 15, 2018 in response to his claim. *Id*. at 39. The letter was addressed to an address in Tijeras, New Mexico. *Id*. No return address is visible on the letter but it lists a "CA License No." on the bottom of the page. *Id*. In the letter, Tribal First advised Mr. Chavez that his claim had been denied because there was "no evidence to support that [his] job duties or anything having to do with [his] employment caused [his] knee to hyper-extend." *Id*.

In their Amended Complaint, Plaintiffs raise five claims arising from Defendants' denial of their workers' compensation claims and the representations in the above-described letters. First, Plaintiffs allege that Defendants violated the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 § 57-12-1 et seq, by, among other things, "knowingly making false or misleading oral or written statements or other representations in connection with the policy of insurance covering Plaintiffs as third party beneficiaries, which tended to or did deceive or mislead Plaintiffs regarding the rights afforded under the policy." *See* Amended Complaint at ¶ 37.

Second, Plaintiffs allege that Defendants Hudson Insurance and Tribal First committed the tort of negligent misrepresentation when they "materially misrepresented that Plaintiffs' claims were denied based on false grounds." *Id*. at ¶ 43. According to Plaintiffs, Defendants' negligent misrepresentations include the statement to Ms. Mendoza that she was required to give notice of her work injury within 24 hours, where that is "not the law in New Mexico," and the statements to all Plaintiffs that "sovereign immunity barred their claims" where "neither [Hudson Insurance nor Tribal First] is [a] tribal entity entitled to claim such a defense." *Id*. at ¶ 44.

Third, Plaintiffs allege that Defendants committed breach of contract when Defendant First Santa Fe "intentionally and negligently failed to secure an insurance policy that would pay valid

4

claims as required under the terms of the contract of insurance" and when Defendants Hudson Insurance and Tribal First "intentionally and negligently failed to investigate Plaintiffs' claims as required under the terms of the contract." *Id.* at ¶¶ 52 and 54.

Fourth, Plaintiffs allege that Defendants breached their implied covenant of good faith and fair dealing on a number of occasions, including when Defendant First Santa Fe "misled Plaintiffs into believing that insurance for valid claims existed when, in reality, sovereign immunity was always going to be raised" and when Defendants Hudson Insurance and Tribal First failed to "inform Plaintiffs that neither corporation was a tribal entity to which sovereign immunity applied to bar their claims." *Id.* at ¶¶ 60 and 61.

Fifth and finally, Plaintiffs allege that Defendants Hudson Insurance and Tribal First participated in a civil conspiracy, the objective of which was to "avoid payment of Plaintiffs' claims as third party beneficiaries of the insurance policy for economic gain." *Id.* at ¶ 66.

For relief, Plaintiffs request compensatory damages, punitive damages, treble damages as allowed under New Mexico law, pre- and post-judgment interest, attorneys' fees and costs, and all other relief that the Court deems just and proper. *See* Doc. 1 Ex. 2 at 14.

## II.     Defendants' Notice of Removal

On October 22, 2019, Defendant Tribal First, with the consent of Defendant Hudson Insurance, filed a Notice of Removal removing the instant case from the Second Judicial District Court to this Court under 28 U.S.C. §§ 1331, 1441(a), (c), and (f), and 1446. Doc. 1. In the Notice, Tribal First asserts that Plaintiffs' claims are removable to federal court because they arise "under the Constitution, laws, or treaties of the United States" and therefore give rise to federal question jurisdiction under § 1331. *Id.* at 3.

### III. Plaintiffs' Motion to Remand

Plaintiffs now move to remand the case back to state court. *See generally* Doc. 10. They argue that removal was improper because "[t]here are no federal claims" in their complaint and Defendants "do not get to create a federal question" for the purpose of removing the case to federal court.[2] *Id*. at 9. Defendants oppose the requested remand and argue that this Court has jurisdiction to decide the case. *See generally* Doc. 14.

### STANDARD

Under 28 U.S.C. § 1441(a), a defendant in a civil action brought in state court may remove the action to the federal district court "embracing the place where such action is pending" if the federal court would have had original jurisdiction over the suit. To affect a proper removal under the statute, a defendant must:

> [F]ile in the district court… a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). "The removing defendant bears the burden of establishing that removal is proper."[3] *Carroll v. City of Albuquerque*, 749 F. Supp. 2d 1216, 1222 (D.N.M. 2010) (citing

---

[2] Plaintiffs also argue that the removal of this case was procedurally defective because the removing Defendants failed to obtain the consent of Defendant First Santa Fe. *See id*. at 14. The Court need not reach this issue because it finds that it lacks subject-matter jurisdiction over Plaintiffs' claims regardless of the manner in which they were removed.

[3] Because federal courts are courts of limited jurisdiction, the Tenth Circuit has also traditionally applied a presumption against removal. *See, e.g., Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) *abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014). In *Dart Cherokee Operating Basin Co. v. Owens*, the Supreme Court ruled that such a presumption should not apply to cases removed under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act or "CAFA," but declined to similarly rule on "mine-run diversity cases" or cases involving potential federal questions. 574 U.S. at 90. As a result, courts in this district continue to recite the presumption against removal in non-CAFA cases. *See City of Neodesha v. BP Corp. North America*, 176 F. Supp. 3d 1233, 1237 n.9 (D. Kan. 2016) (listing cases). The Court need not decide whether applying such a presumption remains appropriate because it is not dispositive in this case.

6

*McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008)).  That includes proving contested jurisdictional facts by a preponderance of the evidence.  *McPhail*, 529 F.3d at 953 (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

One category of cases that fall within a district court's original jurisdiction are civil actions that present a federal question by "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The presence of so-called federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citations omitted).  "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Id*.  Moreover, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction."  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)).  As a result, "a case may *not* be removed to federal court on the basis of a federal defense… even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."  *Caterpillar*, 482 U.S. at 393 (emphasis in original).  The defense of tribal sovereign immunity is no exception to this bright-line rule.  *See Oklahoma Tax Com'n v. Graham*, 489 U.S. 838 (1989) (holding that the Chickasaw Nation's assertion of tribal sovereign immunity did not give rise to federal question jurisdiction over a plaintiff's state tax-law claims).

Courts have recognized that federal question jurisdiction can also arise where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).  This so-called "substantial question" branch of federal question jurisdiction is "exceedingly narrow," however,

and applies only to a "special and small category" of cases. *See Gilmore v. Weatherford*, 695 F.3d 1160, 1171 (10th Cir. 2012) (quoting *Empire*, 547 U.S. at 699). For federal jurisdiction to arise in this context, a plaintiff's state law claim must give rise to a federal issue that is (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Federal courts may remand improperly removed actions back to state court under 28 U.S.C. § 1447. The Tenth Circuit has recognized two grounds for remand under the statute: (1) a lack of subject-matter jurisdiction; and (2) a defect in the removal procedure. *See Miller v. Lamberth*, 443 F.3d 757, 759 (10th Cir. 2006) (citations omitted). Procedural defects must be raised within 30 days after the defendant files the notice of removal; a lack of subject matter jurisdiction can be raised at any time before final judgment. § 1447(c).

## DISCUSSION

In their Notice of Removal, Defendants provide two grounds for this Court's jurisdiction over the instant matter: (1) that all of Plaintiffs' claims "arise out of events on the Pueblo of Isleta," a "federal enclave" over which federal courts retain jurisdiction; and (2) that deciding Plaintiffs' claims requires the resolution of a substantial question of federal law. Doc. 1 at 3–4. The Court is not persuaded that is has jurisdiction on either ground.

First, Defendants have not carried their burden of establishing that removal is proper under the so-called federal enclave doctrine. The doctrine derives from the Enclave Clause of the Constitution, which states:

> Congress shall have power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of Government of the United States, and to exercise like Authority over all Places

8

> purchased by the Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

U.S. Const. art. I, § 8, cl. 17.  "Federal enclave doctrine operates as a choice of law doctrine that dictates which law applies to causes of action arising on these lands." *Allison v. Boeing Laser Tech. Serv's*, 689 F.3d 1234, 1235 (10th Cir. 2012).  The answer is primarily federal law, because "[i]t is well-established that after a state has transferred authority over a tract of land creating a federal enclave, the state may no longer impose new state laws on these lands." *Id*.  Because federal enclave jurisdiction is a "form of federal question jurisdiction," *Celli v. Shoell*, 40 F.3d 324, 328 (10th Cir. 1994), cases that "arise from incidents occurring in federal enclaves may be removed to federal district court." *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998).

As an initial matter, it is not as obvious as Defendants suggest that the Isleta Pueblo is a federal enclave within the meaning of the Enclave Clause.  In arguing that the Pueblo is indeed a federal enclave, Defendants submit that "[w]hen New Mexico became a state in 1912, it acknowledged that Pueblo Indian lands 'shall be and remain subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States.'"  Doc. 6 at 3 (quoting *United States for & on Behalf of Santa Ana Indian Pueblo v. Univ. of New Mexico*, 731 F.2d 703, 706 (10th Cir. 1984)).  They also point to dicta in *N.L.R.B. v. Pueblo of San Juan*, 276 F.3d 1186, 1191 (10th Cir. 2002), in which the Tenth Circuit remarked that "state right to work laws are of no effect in federal enclaves such as Indian reservations." *Id*. at 4.

A number of other federal courts have questioned, however, whether Indian reservations can be federal enclaves over which Congress has "exclusive legislative authority." *Allison*, 689 F.3d at 1237.  In *City of Roseville v. Norton*, for example, the United States District Court for the

9

District of Columbia expressed significant doubt. 219 F. Supp. 2d 130 (D.D.C. 2002). It cited the Supreme Court's 1930 decision in *Surplus Trading Co. v. Cook*, 281 U.S. 647, 651 (1930), in which the Court contrasted an army base subject to the exclusive jurisdiction of the United States under the Enclave Clause with Indian reservations, whose ownership by the federal government "do[es] not withdraw the lands from the jurisdiction of the state" and where the state's laws "have the same force therein as elsewhere within her limits." *Id*. It also cited the Supreme Court's more recent decision in *Nevada v. Hicks*, 533 U.S. 353, 361–62 (2001), in which the Court affirmed that states have "inherent jurisdiction on reservations" and noted that jurisdiction over Indian lands requires "an accommodation between the interests of the Tribes and the Federal Government, on the one hand, and those of the State, on the other." After reviewing these cases, the *Roseville* court seemed persuaded by the defendants' argument that the "exercise of jurisdiction by multiple entities over Indian lands is inconsistent with the presence of exclusive federal jurisdiction" that defines federal enclaves. *See Roseville*, 219 F. Supp. 2d at 151. Deciding a related but distinct issue, the court held that "land taken into trust for Indians does not create an exclusive federal enclave." *Id*. The First, Second, and Ninth Circuits have subsequently come to the same conclusion–that land taken into trust for Indian Tribes are not federal enclaves–for many of the same reasons. *See Club One Casino, Inc. v. Bernhardt*, 959 F.3d 1142, 1151 (9th Cir. 2020); *Upstate Citizens for Equality, Inc. v. United States*, 841 F.3d 556, 571–72 (2d Cir. 2016); *Carcieri v. Kempthorne*, 497 F.3d 15, 40 (1st Cir. 2007), *rev'd on other grounds by Carcieri v. Salazar*, 555 U.S. 379 (2009).

Ultimately, the Court need not decide the difficult issue of whether the Isleta Pueblo is a federal enclave within the meaning of the Enclave Clause because it finds that Plaintiffs' claims are beyond the scope of the federal enclave doctrine even assuming that it is. Courts have held

that the federal enclave doctrine applies only when "the locus in which the claim arose is the federal enclave itself." *In re High-Tech Employee Antitrust Litigation*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012). In making that determination, courts have looked to where the "substance and consummation of the claim occurred" as well as where "all pertinent events occurred." *Smesler v. Sandia Corp.*, No. 17-CV-388 SCY/KK, 2018 WL 1627214, at *8 (D.N.M. Mar. 30, 2018) (unreported) (internal citations and quotations omitted). Some courts also look to the choice-of-law rules governing the specific claims at issue, although others question whether state choice-of-law doctrine can control the federal enclave determination. *Compare Totah v. Bies*, No. C 10-05956 CW, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011) (unreported) (noting that under defamation law, "the place of publication… is, for venue purposes, the place of the wrong" in determining whether the plaintiff's defamation claim arose on the Presidio, a federal enclave in San Francisco) *with Kennicott v. Sandia Corp.*, 314 F. Supp. 3d. 1142, 1169 (D.N.M. 2018) (declining to rely on New Mexico choice-of-law rules because "[a]pplying the federal enclave doctrine only when state law would conclude that a claim arose on the federal enclave would subordinate a power that the Constitution grants to Congress.").

Plaintiffs argue that the federal enclave doctrine does not give rise to federal jurisdiction over their claims because "the events which give rise to Plaintiffs' state law claims did not occur on or in a federal enclave or within the Pueblo of Isleta but occurred outside the Pueblo and outside of the employment relationship with the Pueblo of Isleta." Doc. 17 at 2. They continue, "Plaintiffs do not seek damages for the initial work injuries, but for injuries subsequently occurring from entirely distinct events committed by the non-tribal entity Defendants…. Put simply, the underlying work injuries may have occurred on what Defendants argue to be a federal enclave but the tortious acts complained of in the First Amended Complaint did not occur on or in a federal

enclave but occurred in New Mexico." *Id*. at 2–3.  Plaintiffs also argue that New Mexico's choice-of-law rules affirm that their claims arose off of the Pueblo because in New Mexico, tort claims are governed by the law where "the last event necessary to make an actor liable for an alleged tort takes place."  Doc. 8 at 7 (citing *Abraham v. WPX Energy Prod.,* LLC, 20 F. Supp 3d. 1244, 1256 (D.N.M. 2014) and *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 663 F. Supp. 2d 1138, 1151 (D.N.M. 2009)).

The Court agrees with Plaintiffs that their claims did not arise within the "federal enclave itself" and are therefore beyond the reach of the federal enclave doctrine. *See In re High-Tech*, 856 F. Supp. 2d at 1125.  While Plaintiffs allege that they suffered workplace injuries on the grounds of the Isleta Resort & Casino, those injuries are not the "pertinent events" out of which the claims in this case arose.  *Smesler*, 2018 WL 1627214 at *8.  Instead, the claims in this case center on the allegedly unfair and illegal actions Defendants undertook *after* Plaintiffs suffered their injuries and filed claims for workers' compensation.  *See generally* Amended Complaint.  As a result, the events pertinent to this case include Defendant Tribal First's drafting of the allegedly misleading letters, which appears to have occurred in San Diego, California based on the return address listed on them, as well as Plaintiffs' receipt of the letters in Lunas, New Mexico; Albuquerque, New Mexico; and Tijeras, New Mexico, respectively.  *See* Doc. 1 Ex. 2 at 36–40.  Defendants do not claim that the address from which the letters were sent, nor the addresses at which they were received, are federal enclaves.  The events pertinent to this case also include any acts Defendants Hudson Insurance and Tribal First took in furtherance of their alleged civil conspiracy to "avoid payment of Plaintiffs' claims as third party beneficiaries of the insurance policy for economic gain."  *See* Amended Complaint at ¶ 66.  While Plaintiffs do not identify where the alleged conspiracy took place, there is no suggestion that it occurred on the Isleta Pueblo.

12

On the whole, the facts as alleged by Plaintiffs suggest that the "substance and consummation" of their claims took place off of the purported federal enclave–the Isleta Pueblo–rather than within its boundaries. *Smesler*, 2018 WL 1627214 at *8. Defendants' blanket assertion to the contrary in their Notice of Removal is not enough to establish that federal enclave jurisdiction should apply.[4] *See Carroll*, 749 F. Supp. 2d at 1222 ("The removing defendant bears of the burden of establishing that removal is proper.").

Nor is the Court persuaded by Defendants' second jurisdictional argument that this case falls into the "special and small category" of cases where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire*, 547 U.S. at 690, 699. In arguing that it does, Defendants assert that this case requires the Court to determine the substantial federal question of whether "a state and its courts have jurisdiction over claims arising out of a contract entered into by an Indian tribe for services to be performed on the tribe's reservation under tribal law." Doc. 1 at 3. For one, it is not immediately clear how this question is one of *federal* rather than state or tribal law. Even assuming that the question presented is one of federal law, however, Defendants have failed to explain how it is "necessarily raised" by Plaintiffs' claims. *See Gunn*, 568 U.S. at 258. To the extent that the issue Defendants are raising has to do with a

---

[4] The Court also believes that the instant case is distinguishable from the cases in this and other federal districts that have found the federal enclave doctrine to apply to state employment discrimination claims even where the adverse employment decision occurred off of the enclave. *See Kennicott*, 314 F. Supp. 3d. at 1166 (listing cases). In *Smesler v. Sandia Corporation*, for example, a federal magistrate judge found that the plaintiff's state employment claims arose on Kirtland Air Force Base and were therefore barred by the federal enclave doctrine even though the human resources department involved in the challenged employment decisions was located off of the base. 2018 WL 1627214 at * 8. In so finding, the magistrate judge reasoned that the conduct at issue–the reasonable accommodations the plaintiff alleged were not provided, the alleged discrimination and retaliatory incidents, and the purported violations of the employee handbook–"all concerned [the plaintiff's] work activities on the base" and reflected the defendant's "employment practices on the enclave." *Id*. Here, by contrast, the connection to the purported federal enclave is much more attenuated: the claims at issue are not concerned with either parties' activities on the Pueblo but are instead focused on Defendants' allegedly unfair and illegal actions off of it.

13

possible application of the Isleta Pueblo's tribal sovereign immunity to the claims at hand, they are conflating a potential federal defense with a federal question that is "necessarily raised." *See Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 948 (10th Cir. 2014) (discussing the difference between federal defenses such as tribal sovereign immunity and federal questions that are "necessarily raised."). As the Supreme Court has made clear, the possibility of tribal sovereign immunity does not convert a state law action into one "arising under the Constitution, laws, or treaties of the United States." *See Graham*, 489 U.S. 839; *see also Becker*, 770 F.3d at 948.

Ultimately, Defendants fail to identify a federal question giving rise to jurisdiction in this Court, either on the face of Plaintiffs' Amended Complaint or one upon which their right to relief necessarily depends. Nor have Defendants presented another basis for this Court to exercise subject-matter jurisdiction over Plaintiffs' state law claims. As a result, the Court finds that this case was improperly removed and must be remanded to state court under 28 U.S.C. § 1447(c). Once there, Defendants are free to raise any concerns they continue to have about how this case potentially implicates the Isleta Pueblo's tribal sovereign immunity, an issue which the Second Judicial District Court is more than capable of deciding. *See Mendoza v. Isleta Resort and Casino*, 460 P.3d 467 (N.M. 2020) (holding in a related case brought by Ms. Mendoza that the Isleta Pueblo did not waive sovereign immunity under the 2015 Indian Gaming Compact and that the case must be dismissed because the Pueblo was an indispensable party without which the action could not proceed).

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Remand [Doc. 10] is hereby **GRANTED**. The Clerk of Court is accordingly directed to remand the instant action back to the

Second Judicial District Court in Bernalillo County under 28 U.S.C. § 1447(a) for lack of subject-matter jurisdiction.

ENTERED this 18th day of August 2020.

_____
HONORABLE MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE